EDWARD BAKER & another *vs.* DANIEL K. PRATT.

Charterers of a vessel for an entire voyage, who by themselves or their authorized agent waive the terms of the charter party and consent to and order a deviation from the voyage agreed upon, are liable to pay the stipulated price, in like manner as if the voyage originally contemplated had been performed; and the fact that a memorandum of such consent and order is afterwards written upon the charter party and signed by such agent with his own name alone is immaterial.

If A., being the authorized agent of the charterers of a vessel for an entire voyage, instead of pursuing the voyage agreed upon, to I., consents to abandon it, and signs a memorandum reciting that he has given orders to the captain to keep the ship away for G., the captain deeming it inexpedient from the lateness of the season to visit I., but saying that he held himself in readiness to make further effort to do so if required, the legal effect of the memorandum and of the arrangement of which it is the evidence is, an agreement to deviate from the original course of the voyage, and not an abandonment of the charter party; and the charterers are liable for the stipulated price, although the prosecution of the original course of the voyage had become impracticable by the perils of the seas, and the voyage was in fact broken up; and although, after reaching G., a new agreement was made respecting the homeward voyage, in which the questions affecting the rights of the parties under the charter party were reserved for future adjustment.

CONTRACT on a charter party executed on the 20th of August 1859, between Edward Baker, master and agent for the owners

of the bark Wyman, and Tal. P. Shaffner and Daniel K. Pratt, "for a voyage from Boston to Labrador, Greenland, Iceland, Faroe Islands, and thence to Scotland and back to the United States." No service was made upon Shaffner, and the suit was prosecuted against Pratt alone.

At the trial in this court, before the chief justice, it appeared that the vessel sailed from Boston on the 29th of August, with Baker as master, and Shaffner, and arrived at Labrador, and thence sailed to Greenland, making a port in each of those places, and remaining ten or twelve days on the coast of Labrador, and twenty-one on the coast of Greenland, sometimes at anchor and sometimes endeavoring to make ports. She sailed from Greenland for Iceland on the 11th of October, and soon encountered a series of gales, fogs, snows and bad weather, during which they could get no observations, and much of the time were lying to and drifting with the winds and currents until the 28th, when, as nearly as they could make out, being in latitude 61° 36′, and longitude 20° west, the following entry was made in the log-book: " Rec'd orders from Mr. Shaffner to keep the ship away for Glasgow, the captain deeming it inexpedient from the lateness of the season to visit Iceland, but saying he held himself in readiness to make further effort to do so, if required." The vessel was then put away for Glasgow, and the next day the above entry was copied upon the charter party, and signed " Tal. P. Shaffner, Edward Baker." On reaching Glasgow the agreement copied in the margin * was signed, and a cargo taken on board which was carried to New York.

---

*                    " GLASGOW, SCOTLAND, Nov. 25th, 1859.

" To Capt. Edward Baker: — Dear Sir: The bark Wyman, represented by you, was chartered by me on the 21st of August 1859, for a specific voyage, under certain conditions, obligatory respectively, as therein specified. I consider that the charter contract has not been fully complied with upon your part; but with the view of effecting reciprocal adjustments of all questions that have or may arise under the said charter contract, I make to you the following propositions, viz:

" 1st. The vessel shall be laden for New York, and you are to draw the sum of eighty pounds (£80) sterling, being advance on freight; which sum is to be applied for the purposes of the vessel, under your direction.

The defendant introduced evidence to show that the object of the voyage was to make surveys, soundings and explorations for a line of oceanic telegraph, by way of Labrador, Greenland, Iceland and the Faroe Islands to Scotland; and that it was essential to the purposes of the voyage that the vessel should go to each of the places named in the charter party. Evidence was also introduced relative to the severity of the storms, the practicability of reaching Greenland, and the circumstances under which the memorandum upon the charter party was signed, which it is unnecessary to recite in detail. The defendants contended that the voyage was terminated by necessity, and by circumstances which defeated the right of the plaintiffs to recover, notwithstanding the memorandum; and the chief justice ruled that the voyage described in the charter party was an entire voyage from Boston to Glasgow; that, as the bark did not go to Iceland, it was immaterial for what reason she failed to go there; and that the plaintiffs could not recover unless the memorandum upon the charter party was an agreement to release them from that part of the voyage.

---

" 2d. The remainder of the freight charges shall be drawn by me, and applied towards the payment of port dues, pilotage, &c., &c., as I may find necessary.

" 3d. That the fact of my not abandoning the vessel at this port, shall not be construed hereafter to your or to my prejudice, either in law or equity.

" 4th. That the owners of the vessel may exercise their choice of settling all disputed questions, under the said charter contract, either by law or by arbitration, preferring on my own part the latter course of proceeding.

" Your agreement to these terms will contemplate that you are to receive the specific money at once; to proceed on your voyage to New York; discharge your cargo, as per charter contract; and in the mean time, I will prepare my claims or objections, and forward them to Mr. Henry Burdett, so that they may be in his hands at the time recognized by the charter contract, for the final settlement. My demands can then be allowed; or they may be the subject of litigation or arbitration, as he may determine.          Respectfully,

"Tal. P. Shaffner.

" As the party of the first part in the charter contract with Tal. P. Shaffner, as above referred to, I hereby agree to and with the said Shaffner, to the above letter, and the stipulations therein contained; with the denial of any violation of the charter contract upon my part, in my capacity as master and agent for the owners of the bark Wyman, when abroad.          Edward Baker."

The defendant then requested the court to rule that if, before Shaffner signed the memorandum, or assented thereto in any form, it had become impracticable to go to Iceland or the Faroe Islands, by reason of storms and perils of the sea, so that it would have been useless to attempt it further, and the putting away for Glasgow was the act of a prudent and skilful navigator, and the only course proper to be pursued under the circumstances existing, then the voyage to Iceland, &c., was defeated by perils of the sea; and the fact that Shaffner gave or assented to the order, under these circumstances, would not affect the rights of the parties under the charter party; that the memorandum was not an agreement to abandon any part of the voyage, but a recognition of certain facts then existing and making it impossible then to go to Iceland, and could not affect the rights of the parties otherwise than if Shaffner had been master, under the charterers, and given the order; and that if the only prudent and proper course was to put away for Glasgow, it would be the duty of the master to do so, and an agreement that he might do so would be without consideration.

The chief justice declined so to rule, and ruled that the memorandum was an agreement to abandon going to Iceland, &c., and that it would bind Pratt if Shaffner had authority, express or implied, from him to make it, and, in that case, the plaintiffs might recover on the charter party.

The defendant then requested the court to rule that the memorandum, not being in terms executed by Shaffner as agent, and not assuming to bind Pratt, bound Shaffner alone; but the chief justice ruled otherwise.

The defendant then offered in evidence the paper executed at Glasgow, and contended that it was an agreement that the rights of the parties should be settled as they would be at law, and waived or controlled the memorandum; but the chief justice excluded it.

The jury found specially that Shaffner was authorized by the defendant to sign the memorandum indorsed on the charter party; and the case was thereupon reserved and reported for the determination of the whole court.

*J. C. Dodge,* for the plaintiffs.

*C. T. Russell,* for the defendant. The memorandum on the charter party was merely in form and effect the recognition of an existing state of facts. The voyage had already been defeated; and Shaffner, if he controlled the vessel, was not only at liberty, but was bound, under the circumstances named in the rulings which were asked for, to give the order to put away for Glasgow. The memorandum was not in itself an agreement or an order; it was simply an admission, in writing that an order had been given. The charterer of a vessel is bound to use it in a prudent manner. *Weston* v. *Minot,* 3 Woodb. & M. 436, 455. *Weston* v. *Foster,* 2 Curtis C. C. 119. If Shaffner had been the master, he would have been bound to do the same. Even if the memorandum is construed as an agreement, it was wholly without consideration. It was not executed in such form as to bind Pratt. And the jury only find that Shaffner had authority; not whether he exercised it.

HOAR, J. The court are of opinion that, upon the report and special finding of the jury, the plaintiffs are entitled to judgment.

The jury have found that Shaffner was authorized by the other defendant, Pratt, to sign the memorandum indorsed on the charter party. It is argued for the defence, that, if he had this authority, it has not been found as a fact, nor does the evidence show, that he exercised it. But the act of signing the paper was in itself an exercise of his authority. It was undertaking to direct the course of the voyage, the subject of the joint concern of the charterers of the vessel, in which he had no separate interest. Having the power and duty to act for both, and acting upon a matter within the scope of his agency, his acts bind his principal. The form of signing the memorandum is immaterial. It was merely making written evidence of an agreement which the evidence shows had been previously made and carried into effect.

And the court are all of opinion that the ruling of the chief justice at the trial was right; and that the legal effect of the memorandum on the charter party, and of the arrangement of

which that memorandum was the evidence, was an agreement to deviate from the original course of the voyage, to abandon the going to Iceland and the Faroe Islands, and not an abandonment of the charter party; and that the rights of the parties, except so far as they were modified by the change agreed upon, remained unimpaired. We assume, for the purposes of the argument, that the voyage upon which the vessel was engaged, from Boston to all the intermediate ports named in the charter party, and back to the port of discharge in the United States, was an entire voyage. We may also assume, as the defendant's counsel contends, that the prosecution of the voyage to Iceland had become impracticable, by the perils of the seas; and that the voyage was in fact broken up, without reference to any agreement of the parties. The question still remains, what, in that state of the case, did they agree to do about it? If the master, acting in the course of his duty, and using his discretion, decided to abandon the voyage, and make for a harbor of refuge, then the claims of the owners for compensation under the charter party would be unfounded. But if the entire abandonment of the voyage was not desirable either to the owners or charterers, and they chose to prosecute it further with such modifications as circumstances rendered expedient, they certainly could do so. The latter is the course which it seems to us was adopted. The master evidently did not act on his own responsibility, and had no intention of doing so. He was still ready to attempt the prosecution of the voyage. As the memorandum and the evidence alike show, the change in the voyage was under the " orders " of Shaffner, the captain concurring in the plan directed, agreeing that it was " inexpedient to visit Iceland," but adopting the course the charterer directed.

If the voyage were abandoned, the duty of determining what should next be done devolved exclusively upon the master. He was under no obligation to go to Glasgow, but had the right to return home, or put into such port as the interests of the owners required. With the abandonment of the voyage, the rights of the charterers to control the employment of the vessel would have ended. Shaffner could give no " orders," except upon the

ground that the vessel was still engaged in his service. What he manifestly did was, to direct that the touching at two inter-mediate ports should be dispensed with, and that the voyage should be continued with that modification. To this, the owners having no interest to the contrary, the master assented, deeming it a judicious and proper proceeding. There is no evidence that Glasgow was the only proper port to make, or the best for the interest of the owners, if the voyage was broken up, or that it was selected for any other reason than because it was the next port in the voyage which they were still pursuing.

The agreement signed at Glasgow we think has no material bearing upon the case. It was a subsequent and independent transaction, occurring after controversies had arisen, and expressly agreed to have no influence in settling the rights of either party under the original charter. The sailing for Glasgow having been an agreed modification, and not an abandonment, of the voyage, the plaintiffs' right to recover on the charter party continued till the vessel arrived there, and was not forfeited by any subsequent arrangement.

*Judgment for the plaintiffs.*